# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GREATER MOBILE URGENT CARE,** ) | |
| **P.C. and GMUC OF LUCEDALE, P.C.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:20-cv-378-TFM-N |
| ) | |
| **THE CINCINNATI INSURANCE,** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is *Defendant The Cincinnati Casualty Company's Motion to Dismiss* and *Defendant The Cincinnati Casualty Company's Brief in Support of its Motion to Dismiss Pursuant to Rule 12(b)(6)* (Docs. 12, 13 filed September 4, 2020). The motion has been fully briefed and is ripe for review. Having considered the motion, response, reply, and relevant law, the Court **GRANTS** Defendant's motion to dismiss for the reasons articulated below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Greater Mobile Urgent Care, P.C. ("Greater Mobile") is an Alabama professional corporation which operates several walk-in medical clinics in Mobile County, Alabama. Doc. 1 at ¶¶ 1, 6. Plaintiff GMUC of Lucedale, P.C. ("GMUC") is an Alabama professional corporation which operates a walk-in medical clinic in Lucedale, Mississippi (collectively, "Plaintiffs"). *Id*. at ¶¶ 2, 7. Defendant The Cincinnati Insurance Company ("Cincinnati" or "Defendant") is an Ohio insurance corporation. *Id*. at ¶ 3. Plaintiffs purchased "all-risk" policies from Cincinnati that insured against all risks of direct physical loss unless the loss was specifically excluded by the policy. *Id*. at ¶ 10. The Greater Mobile policy covered their Mobile properties from October 13,

2019 to October 13, 2022. *Id*. at ¶ 8; Doc. 1-2 at 5. The GMUC policy covered the Lucedale properties from October 13, 2019 to October 13, 2020. Doc. 1 at ¶ 9; Doc. 1-3 at 3. Greater Mobile's policy covers Building and Personal Property Coverage Form (Including Special Causes of Loss) FM 101 05 16 and Business Income (and Extra Expense) Coverage Form FA 213 05 16. Doc. 1-2, Ex. A. GMUC's policy covers Building and Personal Property Coverage Form (Including Special Causes of Loss) FM 101 05 16, which includes, under its Coverage Extensions, Business Income and Extra Expense Coverage.[1] Doc. 1-3, Ex. B. The provisions of both policies are identical in all material respects. *Id.* at ¶ 13.

Plaintiffs' Building and Personal Property Coverage provides that: "[Defendant] will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Causes of Loss." Doc. 1-1, Ex. A at 25. Greater Mobile's Business Income (and Extra Expense) Coverage Form provides:

> **A. Coverage**
> **1. Business Income**
> …
> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss….

Doc. 1-2, Ex. A. at 122.

GMUC's Business Income (and Extra Expense) Coverage Form provides:

> **b. Business Income and Extra Expense**
> ….
> **1. Business Income**
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your

---

[1] Using the same language, each form supplies Business Income Coverage and Extra Expense Coverage. *See* Doc. 1-2, Ex. A at 122 – 130; Doc. 1-3, Ex. B at 41 – 44.

> "operations" during the "period of restoration".  The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss…."

Doc. 1-3, Ex. B at 41.

Each Plaintiff's policy defines "suspension" as:

> **a.** The slowdown or cessation of your business activities….

Doc. 1-2, Ex. A at 62; Doc. 1-3, Ex. B at 63.

Both Plaintiffs purchased coverage for Extra Expense, which the policies define as:

> **2. Extra Expense**
> …
> **b.** Extra Expense means necessary expenses you sustain…during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

Doc. 1-2, Ex. A. at 122; Doc. 1-3, Ex. B at 42.

Each Plaintiff's policy provides:

> **3. Covered Causes of Loss**
>
> **a. Covered Causes of Loss**
> Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

Doc. 1-2, Ex. A. at 27; Doc. 1-3, Ex. B at 28.

Each of Plaintiff's policy defines "Loss" as:

> **8.** …"accidental physical loss or accidental physical damage."

Doc. 1-2, Ex. A. at 60; Doc. 1-3, Ex. B at 61.

Each of Plaintiff's policy provides:

> **b. Exclusions**
>
> (1) We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

>   …
>   **(l) Pollutants**
>   Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss"…

Doc. 1-2, Ex. A. at 27, 32; Doc. 1-3, Ex. B at 28, 33.

Each of Plaintiff's policy defines "Pollutants" as:

>   **12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.  "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "polluntants"….

Doc. 1-2, Ex. A. at 61; Doc. 1-3, Ex. B at 62.

On March 13, 2020, President Trump declared the COVID-19 pandemic a national emergency.  Doc. 1 at ¶ 24.  Subsequently, Alabama Governor Kay Ivey declared the COVID-19 pandemic a State public health emergency and directed state agencies to exercise their statutory and regulatory authority to help curb the rise of COVID-19 cases in the State.  *Id.* at ¶ 25.  Alabama State Health Officer Dr. Scott Harris entered a Statewide Order which provided that effective March 28, 2020, at 5:00 PM, all non-emergency medical procedures would be postponed until further notice.[2]  *Id*. at ¶ 27; Doc. 1-4, Ex. C.  On April 28, 2020, Dr. Harris entered an amended order which provided that effective April 30, 2020, at 5:00 PM, non-emergency medical procedures, which had been effectively prohibited under Dr. Harris's March 27th Order, could proceed under certain guidelines.  Doc. 1 at ¶ 27; Doc. 1-5, Ex. D.

---

[2] The Order permitted necessary emergency medical treatments. *See* Doc. 1-4, Ex. C, at §§ 7a, 7b.

On March 14, 2020, Mississippi Governor Tate Reeves declared a state of emergency in Mississippi in response to the COVID-19 pandemic. On March 19, 2020, Dr. Thomas Dobbs, the Mississippi State Health Officer, entered an order requiring medical facilities in Mississippi to defer all non-urgent medical appointments and procedures. *Id*. at ¶¶ 28-29; Doc. 1-6, Ex. E. On April 10, 2020, Governor Reeves issued Executive Order 1470 requiring all healthcare facilities to postpone all medical procedures that were not immediately medically necessary. Doc. 1-7, Ex. F. On April 24, 2020, Governor Reeves issued Executive Order 1477, which allowed medical facilities to resume performing non-emergent medical procedures under certain guidelines. Dr. Dobbs also entered an order that allowed medical facilities to resume performing non-emergency medical procedures pursuant to certain guidelines. Docs. 1 at ¶ 31, 1-8, Ex. G.

Plaintiffs contend that Greater Mobile's and GMUC's respective business operations underwent a "suspension", as the term is defined in their policies, because they were prohibited from performing medical procedures that comprised the vast majority of its medical practice. *Id*. at ¶¶ 33, 34. Consequently, Greater Mobile and GMUC loss business income and submitted claims for their losses to Defendant pursuant to the business-income and extra-expense provisions of their insurance policies. *Id*. at ¶ 35. On March 27, 2020, Greater Mobile submitted a claim for losses to which Defendant responded with a reservation-of-rights letter and requested Greater Mobile provide certain information regarding its claim, such as the presence of coronavirus at Greater Mobile's premises and the orders requiring them to close. *Id.* at ¶¶ 36, 37; Doc. 1-10, Ex. I. On June 2, 2020, Greater Mobile's counsel responded to Defendant's letter with a claim on behalf of GMUC under the business-income and extra-expense coverage provision of the policy and by providing clear evidence that coronavirus was present at Greater Mobile's and GMUC's premises. Doc. 1 at ¶ 40. The evidence included documentation of patients' positive coronavirus test at each

Plaintiff's premises and an affidavit of an administrative employee who tested positive for coronavirus after visiting each of Plaintiff's premises. *Id*. On June 8, 2020, Defendant denied Plaintiffs' claims because there was no direct physical loss to the insureds' business premises, and in any event coverage was excluded under the policies' Pollution Exclusion. *Id*. at ¶ 41; Docs.1-12, 1-13, Exs. K, L. Plaintiffs' Complaint (Doc. 1, filed 08/03/2020) raises two causes of actions against the Defendant: (1) Declaratory Judgment, and (2) Breach of Contract. Doc. 1 at 11. Plaintiffs' breach of contract claim alleges Defendants breached the Parties' agreements by denying "coverage for Plaintiffs' losses of business income when those losses are covered losses under the coverage forms specified above." *Id.* at ¶ 54. Defendant filed its Motion to Dismiss and a memorandum in support of its motion on September 4, 2020. Doc. 12. Plaintiffs filed their response in opposition to Defendant's Motion to Dismiss on September 29, 2020. Doc. 16. On October 15, 2020, Defendant filed its reply brief in support of its Motion to Dismiss. Doc. 21. Subsequently, Defendant has filed three Notices of Supplemental Authority citing precedent for the court to consider in conjunction with Defendant's arguments. Docs. 22, 23, 24. The motion to dismiss is fully briefed and ripe for the Court's consideration.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 1974 (2007)). Unless the

plaintiffs have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. To meet the plausibility standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950. The court must draw "all reasonable inferences in the plaintiff's favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

The court is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950. The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682, 129 S. Ct. at 1951-52).

### III.   DISCUSSION AND ANALYSIS

Plaintiffs' Complaint alleges breach of contract and seeks a declaratory judgment to

determine whether their business income losses and any extra expenses are covered under the Building and Personal Property (Including Special Causes of Loss) and the Business Income (and Extra Expense) coverage forms specified above.  Doc. 1 at 11 - 12.  Defendant moves this Court to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  Doc. 12.  Defendant contends that Plaintiffs' Complaint is due to be dismissed because: (1) Plaintiffs' allegations fail to establish that they have sustained any losses attributable to direct physical loss of property, which is required to trigger coverage; (2) coronavirus does not cause direct physical loss of property because it can be cleaned; and (3) Plaintiffs fail to allege that coronavirus was on their property.  Doc. 13 at 10 - 17.

Plaintiffs filed their response in opposition on September 29, 2020.  Doc. 16.  In their Response, Plaintiffs argue that the Court should certify the question of what the business-income coverage provision means to the Alabama Supreme Court.  *Id.* at 7.  Plaintiffs do not dispute that they "have not pleaded a tangible, physical alteration of property, because Plaintiffs contend that a direct loss of the physical usability of their business premises constitutes a direct physical loss to property."  *Id*. at 4.  Plaintiffs contend that the business-income coverage provision applies to their loss of the usability of their business premises.  Plaintiffs assert that the physical presence of coronavirus in Plaintiffs' premises combined with the governmental orders satisfy the policies' requirement that there be a suspension of business operations caused by direct physical loss to property. *Id*. at 2 - 3.  Specifically, Plaintiffs contend that they adequately alleged a direct physical loss of property because the State's Order rendered their business premises physically unusable for their intended routine business operations.  Plaintiffs also argue that the definition of the term "period of restoration" embraces loss of the usability of Plaintiff's business premises.

On October 15, 2020, Defendant filed a reply brief in support of its Motion to Dismiss.

Doc. 21. In its Reply, Defendant refutes Plaintiffs' request that the direct physical loss issue be certified to the Supreme Court of Alabama and reiterates its arguments in support of dismissal. Defendant also attached exhibits of other Court decisions that support Defendant's interpretation of the policy language. Subsequently, Defendants have also filed supplemental authority in support of its Motion to Dismiss. Docs. 22, 23, 24.

### A. Alabama Insurance Contract Construction

Under Alabama law, the rules that govern insurance contract construction are well-settled. Generally, a court must decide whether a contract is ambiguous or unambiguous. "If a word or phrase is not defined in an insurance policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. The Court should not define words it is construing based on technical or legal terms." *See Crook v. Allstate Indemnity Company*, 314 So. 3d 1188, 1193 (Ala. 2020) (internal citations and quotation marks omitted).

> When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interpret them as a reasonable person in the insured's position would have understood them. If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. A court must not rewrite a policy so as to include or exclude coverage that was not intended. However, if a provision in an insurance policy is found to be genuinely ambiguous, policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.

*Id*. at 1193 -1194.

Furthermore, "an insurance policy must be read as a whole. The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions." *Cowart v. Geico Cas. Co.*, 296 So. 3d 266, 270 (Ala. 2019).

## B. Certification to the Alabama Supreme Court is not necessary

The Court finds that it is unnecessary to certify the meaning of the coverage provisions to the Alabama Supreme Court. Pursuant to Rule 18 of the Alabama Rules of Appellate Procedure, federal courts may certify "determinative" questions of law where "there are no clear controlling precedents in the decisions of the supreme court of this state" to receive "instructions concerning such questions or propositions of state law[.]" ALA. R. APP. P. 18(a). When deciding whether to certify a question to the Alabama Supreme Court, courts are instructed to consider several factors:

> (1) [T]he closeness of the question; (2) the existence of sufficient sources of state law; (3) the degree to which consideration of comity are relevant in light of the particular issue and case to be decided; (4) the likelihood of recurrence of a particular issue; and (5) the practical limitations of the certification process.

*Arnold v. State Farm Fire and Casualty Co.*, Civ. Act. No. 17-0148-WS-C, 2017 WL 5451749, * 4, 2017 U.S. Dist. LEXIS 187841, * 10 (S.D. Ala. Nov. 14, 2017) (citing *Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924 (11th Cir. 1986); *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976)).

Plaintiffs argue that the meaning of the business-income coverage and extra-expense coverage provisions, specifically "direct physical loss or damage to property" should be certified to the Supreme Court of Alabama. Doc. 16 at 7. Plaintiffs reason that the doubt pertaining to the application of the state law makes certification appropriate to avoid making unnecessary *Erie* guesses. *See Mosher v. Speedstar Div. of AMCA Intern, Inc.*, 52 F.3d 913, 916-917 (11th Cir. 1995). Plaintiffs contend that "the Alabama Supreme Court would probably be inclined to accept the certified question, because the COVID-19 pandemic has generated numerous business-interruption-insurance lawsuits across the country, and several in this state, with the interpretation of this coverage provision the dispositive issue." Doc. 16 at 8. In their Reply, Cincinnati alleges that Plaintiffs' request for certification is forum shopping. Doc. 21 at 13. Cincinnati reason that

"Plaintiffs should have filed this action in Alabama state court initially instead of filing in federal court and then asking for certification after the defendant's motion to dismiss is fully briefed." *Id*. Furthermore, Cincinnati posits that certification would cause significant delay, judicial inefficiency, and a burden on the federal courts and the Supreme Court of Alabama, in this case and others. The Court is not persuaded that certification is necessary because the question presented is not sufficiently close to warrant certification. Therefore, the Court will address the merits of Plaintiffs' arguments.

### C. Plaintiffs have not alleged a direct physical loss to their property

The issue before the Court is whether Plaintiffs have sustained any losses attributable to direct physical loss of property. Cincinnati argues that Plaintiffs' Complaint should be dismissed because losses caused by COVID-19 and the related State Orders are not covered by the Plaintiffs' policies. Cincinnati reasons that to trigger coverage, the policy requires that Plaintiffs have suffered "direct 'loss' to property." Doc. 13 at 5. Both policies define "loss" as being "accidental *physical* loss or accidental *physical* damage." *Id*. (emphasis added). Thus, Plaintiffs are only entitled to coverage if they can show that their properties suffered direct physical loss or damage. The Court finds that Plaintiffs have not shown that their properties suffered direct physical loss or damage because courts have consistently held that loss of usability is not a direct physical loss or damage.

Plaintiffs contend that the State Orders prevented them from being able to use their respective business premises for their intended purposes, and that loss constitutes a direct physical loss of property under the insurance provisions.[3] Plaintiffs rely on the provision's use of the term

---

[3] The Court may consider insurance policies attached to or referenced in the complaint when resolving a Rule 12(b)(6) motion. *See Valley Creek Land & Timber v. Colonial Pipeline Co.*, 432 F. Supp. 3d 1360, 1363 (N.D. Ala. Jan. 7, 2020).

"or." The phrase, "direct physical loss or damage" is disjunctive. The coverage provision frames "loss to property" and "damage to property" as alternatives, which suggest "loss" and "damage" have different meanings. Doc. 16 at 9. To determine the common meaning of terms of an insurance policy, the Alabama Supreme Court has looked to dictionary definitions. *See State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 309 (Ala. 1999). Accordingly, Plaintiffs reason that the *Oxford Dictionary* defines "damage" as "Physical harm caused to something in such a way as to impair its value, usefulness, or normal function."[4] Plaintiffs contend that the policy's use of the phrase "loss to property" does not mean a tangible alteration to property. Consequently, the phrase reasonably includes the loss of usability. Doc. 16 at 9. In support of their argument, Plaintiffs rely on our sister court's holding in *Studio 417, Inc. v. Cincinnati Ins. Co.*, F. Supp. 3d 794, 800 (W.D. Mo. 2020). In *Studio 417*, the court found that plaintiffs adequately stated a claim for direct physical loss by alleging a causal relationship between COVID-19 and their alleged losses. *Id*. The court reasoned that COVID-19, a physical substance that lives on and is active on inert physical surfaces, allegedly attached to and deprived plaintiffs of their property resulting in direct physical loss to their premises and property by making it unsafe and unusable. *See id.*

Additionally, Plaintiffs argue that Defendant relies on cases that are distinguishable from this case because neither case involved the physical presence of a highly contagious virus. Specifically, the Eleventh Circuit held that the term direct physical loss to property requires physical injury to the property, and the presence of something that can be cleaned off does not constitute physical loss or damage to property. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x. 868, 879 (11th Cir. 2020) (holding that plaintiff failed to show that dust and debris generated by construction that migrated into plaintiff's restaurant caused direct loss because

---

[4] "Damage." *Oxford Dictionary*, n.d. https://www.lexico.com (24 Aug. 2021).

traditional cleaning solved the problem and nothing in the restaurant had to be removed and replaced).

Lastly, Plaintiffs argue that the definition of "Period of Restoration" embraces loss of the usability of Plaintiff's business premises. Doc. 16 at 15. The policy states that the "period of restoration" ends on the earlier of, "[t]he date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality…." Doc. 1-3 at 61. Plaintiffs contend that one definition of "repair" is "to restore to a sound or healthy state."[5] Based on this definition, Plaintiffs conclude that their premises were not in a sound state because they could not use it for its intended purpose. Plaintiffs posit that their premises "would be restored to a sound state when the governmental orders…were lifted, or when the threat posed by the physical presence of the coronavirus had been eliminated or sufficiently reduced." Doc. 16 at 15.

In its reply, Defendant argues that the Western District of Missouri's decision in *Studio 417* should be ignored because it misapplies the law. Defendant reasons that *Studio 417* concluded that the plaintiffs' allegations satisfied the direct physical loss requirement because the virus itself has a physical aspect to it. This conclusion is the basis of the Court finding a connection between plaintiffs' purely financial losses and the virus because the virus is a physical substance. Doc. 21 at 9. However, the key distinction is that "it is the alleged physical loss or damage *to the plaintiff's property itself, not the allegedly damage-causing agent*, that must be physical." *Id*. Furthermore, Defendants argue that Plaintiffs make the same erroneous argument as the plaintiffs in *Studio 417* by contending that the loss is physical because it is reasonable to infer the presence of people infected with COVID-19 physically deposited the coronavirus on Plaintiffs' premises.

---

[5] "Repair." *Merriam-Webster.com*, n.d https://www.merriam-webster.com (30 Aug. 2021).

Contrary to Plaintiffs' argument that the policy's use of the phrase "loss to property" does not mean a tangible alteration to property, many courts have found otherwise. *See Hillcrest Optical, Inc. v. Continental Casualty Co.*, 497 F. Supp. 3d 1203 (S.D. Ala. Oct. 21, 2020) (holding plaintiff was not entitled to reimbursement from insurance company for loss business income during state-ordered shutdown for COVID-19 because the policy only covered direct physical losses to the property, which requires tangible alteration to property); *Woolworth, LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-01084-CLM, 2021 WL 1424356, 2021 U.S. Dist. LEXIS 72942 (N.D. Ala. Apr. 15, 2021) (holding COVID-19 shutdown did not cause physical damage or loss to entertainment venue because a virus neither physically alters the property it rests on nor requires property to be repaired, rebuilt, or replaced); *Dukes Clothing, LLC v. Cincinnati Ins. Co.*, No. 7:20-cv-860-GMB, 2021 WL 1791488, 2021 U.S. Dist. LEXIS 86115 (N.D. Ala. May 5, 2021) (holding direct physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause). In a recent unpublished opinion, the Eleventh Circuit considered a similar matter in *Gilreath Family & Cosmetic Dentistry, Inc. v. The Cincinnati Insurance Co.*, No. 21-11046, 2021 WL 3870697, 2021 U.S. App. LEXIS 26196 (11th Cir. Aug. 31, 2021). Similar to the COVID-19 State Orders issued in Alabama and Mississippi, Georgia also issued a State Order that postponed routine and elective procedures that financially impacted Gilreath's dental practice. *Id*. at 2. Subsequently, Gilreath filed a claim for business interruption coverage with its insurer, Cincinnati Insurance, seeking to recover lost income. Cincinnati Insurance determined that Gilreath had not asserted any physical loss or damage to property, either at or off the dental practice's premises. When Cincinnati Insurance denied the claim, Gilreath sued alleging the insurer breached the terms of its policy. The district court dismissed Gilreath's complaint because Gilreath failed to allege any "direct physical loss or damage" to property, which is necessary for

coverage under the policy. The district court relied on the Eleventh Circuit's definition of "direct physical loss" in *Mama Jo's*. Specifically, the Eleventh Circuit's interpretation of the phrase "direct physical loss" concluded that the plain meaning of the phrase finds the words "direct" and "physical" modify "loss" and therefore requires that the damage be actual. *Mama Jo's,* 823 F. App'x. at 879. Accordingly, the Eleventh Circuit affirmed the district court's dismissal of Gilreath's complaint. The Eleventh Circuit held that Plaintiff failed to state a claim that Cincinnati Insurance Company breached the policy's "Business Income" and "Extra Expense" provisions because the Plaintiff did not allege anything that could "qualify, to a layman or anyone else, as physical loss or damage." *Gilreath*, 2021 WL 3870697, at *2, 2021 U.S. App. LEXIS 26196, at *6. The court reasoned that the presence of viral particles do not cause physical damage or loss to property. *Id.* Though this case pertains to Georgia premises and contract law, the case is sufficiently analogous.

Furthermore, the issue before this Court has been considered by courts around the country and they have almost uniformly held that economic losses resulting from state and local government orders closing businesses to slow the spread of COVID-19 are not covered under "all risk" policy language identical to that in this case because such losses were not caused by direct physical loss of or damage to the insured property. *See, e.g., Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289 (N.D. Ga. Oct. 6, 2020) (remanded by *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 20-14156, 2021 WL 1851381, 2021 U.S. App. LEXIS 10240 (11th Cir. Apr. 8, 2021)); *Oral Surgeons, PC v. Cincinnati Ins. Co.*, 491 F. Supp. 3d 455 (S.D. Iowa Sept. 29, 2020) (affirmed by *Oral Surgeons, PC v. Cincinnati Ins. Co.*, 2021 WL 2753874, 2021 U.S. App. LEXIS 19775 (8th Cir. July 2, 2021)); *Sandy Point Dental, P.C. v. The Cincinnati Ins. Co.*, 488 F. Supp. 3d. 690 (N.D. Ill. Sept. 21, 2020) (held that the allegations in the

complaint failed to satisfy the direct physical loss requirement because it did not plead physical alteration or structural degradation of property); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp.3d 353, 360 (W.D. Tex. Aug. 13, 2020); *Maube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, 2020 U.S. Dist. LEXIS 156027 (S.D. Fla. Aug. 26, 2020). Pursuant to the insurance treatise that Alabama courts frequently rely on for insurance coverage disputes, a direct physical loss requires a tangible injury to property. *See* COUCH ON INSURANCE 10A § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."). Although Plaintiffs maintain that their inability to use their respective property for its intended purposes constitutes a direct physical loss, this Court does not agree. After eliminating labels and legal conclusions from Plaintiffs' Complaint, the Court accepts the key allegations as true and views them in the light most favorable to Plaintiffs. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. These allegations reflect that Plaintiffs were forced to suspend all non-emergency medical procedures pursuant to state orders implemented to curb the spread of COVID-19 and doing so had an economic impact on their business income. However, Plaintiffs' allegations fail to allege actual physical damage to their respective premises, which is required to trigger coverage. Plaintiffs' loss of usability did not result from an immediate occurrence which tangibly altered or disturbed their property, but rather temporarily halted their business operations. Thus, Plaintiffs have failed to "nudge their claims across the line from conceivable to plausible." *Id.* at 570, 127 S. Ct. at 1974.

Defendant refutes Plaintiffs' "Period of Restoration" argument by relying on the *Henry's Louisiana Grill* decision. *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289 (N.D. Ga. Oct. 6, 2020). The court held that the definition of period of restoration contemplates a range of potential covered damages ranging from those requiring repairs or replacements to those requiring the relocation of the business. This range aligns with an understanding that 'loss of' means total destruction while 'damage to' means some amount of harm or injury. The court concluded that loss requires actual physical harm or injury. *Id.* at 1296. Here, this Court is not persuaded by Plaintiffs' interpretation of "repair" and finds that such an interpretation is shared by a reasonable insured. The meaning generally given to "repair" in Alabama and elsewhere suggest that a reasonable insured would understand a "repair" is necessary only when there has been a tangible alteration of property. *See Hillcrest Optical,* 497 F. Supp. 3d at 1213.

Accordingly, this Court finds that Defendant's Motion to Dismiss is due to be granted because Plaintiffs have failed to allege a direct physical loss of or damage to their respective properties.

### D. Plaintiff's request for a Declaratory Judgment fails

When a plaintiff requests injunctive relief such as a declaratory judgment, premised on its underlying legal claims, and those claims fail, its request for a declaratory judgment also fails. *See Sadeghian v. Univ. of S. Ala.*, Civ. Act. No. 18-cv-009, 2020 WL 869217, *12, 2020 U.S. Dist. LEXIS 29534, *38 (S.D. Ala. Feb. 21, 2020) (collecting cases). Here, since Plaintiffs' underlying legal claims fail, their request for a Declaratory Judgment likewise fails.

### IV. CONCLUSION

Pursuant to the foregoing Memorandum Opinion, *Defendant's Motion to Dismiss* (Doc.12)

is **GRANTED.** Plaintiff's Complaint is dismissed with prejudice. The Court will issue a separate final judgment.

      **DONE** and **ORDERED** this the 29th day of September, 2021.

                                                                                                           s/Terry F. Moorer
                                                                                                        TERRY F. MOORER
                                                                                                        UNITED STATES DISTRICT JUDGE